IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Pamela Bradley, ) | C/A No. 5:13-521-TLW-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| City of Orangeburg, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

    The plaintiff, Pamela Bradley, filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., against her former employer, the City of Orangeburg. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on cross motions for summary judgment (ECF Nos. 60, 62, & 65). Both parties filed responses (ECF Nos. 61, 67, & 76) and replies (ECF Nos. 75 & 80). Having reviewed the parties' submissions and the applicable law, the court concludes that the City's motion should be granted and Bradley's motions denied.

### BACKGROUND

    The following facts are either undisputed or are taken in the light most favorable to the non-moving party, to the extent they find support in the record. Bradley is a former public safety officer for the City of Orangeburg. The Complaint and record indicate that Bradley experienced various disciplinary problems and perceived unfair treatment during her employment with the City. Believing that she was the subject of discrimination based on her race and gender, she filed an administrative charge with the South Carolina Human Affairs Commission on April 14, 2010. After

*PJG*

that, she perceived that she continued to be treated unfairly and was retaliated against for filing the charge of discrimination. For example, she alleges that she was assigned an unsafe City vehicle; that she was not provided necessary equipment such as a computer and telephone; that she was the only officer required to sign out for lunch breaks over the radio; and that she began to receive intimidating stares from supervisors and higher ranked officers. Consequently, in the fall of 2010, Bradley filed a second charge of discrimination with the Human Affairs Commission based on the perceived retaliation. Bradley did not, however, pursue any litigation stemming from these first two administrative charges.

According to Bradley, the retaliatory conduct continued, specifically with regard to her City-issued vehicle and the failure to provide her with a computer and telephone. Additionally, on December 21, 2010, Bradley was scheduled to provide security in municipal court. Unlike other officers, however, Bradley had not been provided advance notice of the schedule for that day; rather, she learned from other officers that morning that she was scheduled to provide courtroom security. According to Bradley, Corporal Mitch Jackson allowed her to leave her post and filled in for her while she went to the Records Bureau to use the computer. It was a busy day in court and, when Bradley started to leave the courtroom, another officer, Corporal Dantzler, told her to stay. Bradley refused and proceeded to the Records Bureau, where she contends she was using the computer to type a complaint of discriminatory treatment. Corporal Dantzler noticed Bradley in the Records Bureau on his way to retrieve the transport van and informed Captain Turner that Bradley was away from her scheduled post. Captain Turner confirmed that Bradley was scheduled for court security and went to the Records Bureau where he found Bradley typing on the computer. Captain Turner directed Bradley to return to the courtroom and escorted her there. He then returned to the computer



and printed what Bradley had been typing. One of the documents on the "thumb drive" that Bradley was using contained a statement by Bradley indicating that she was "needing . . . to see [her] counselor" because she was "having serious thoughts of physically hurting [her] supervisors." (See Turner Mem. to Davis dated Dec. 29, 2010, Attach. to Yow Decl., ECF No. 65-32 at 10-11.) Bradley was immediately relieved of duty and essentially suspended for approximately two weeks. Her employment was ultimately terminated on January 5, 2011. Bradley filed a third administrative charge based on retaliation. This action followed.

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.



In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.    Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame work—with its presumptions and

Page 4 of  10



burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as

a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.    Bradley's Retaliation Claim**

Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). In the employment discrimination context, courts have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). In South Carolina, the charge must be filed within 300 days after an "alleged unlawful employment practice" occurred. 42 U.S.C. § 2000e-5(c), (e); Jones v. Calvert Group, Ltd., 551 F.3d 297 (4th Cir. 2009). "[The timely filing of a charge] is mandatory: a violation not made the subject of a timely charge is 'the legal equivalent of a discriminatory act which occurred before the statute was passed' and is 'merely an unfortunate event in history which has no present legal consequences.'" Venkatraman v. REI Systems, Inc., 417 F.3d 418, 420 (4th Cir. 2005) (quoting United Air Lines v. Evans, 431 U.S. 553, 558 (1977)). The failure to file a timely charge with the EEOC bars the claim in federal court.[1] See McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court.").

---

[1] The statutory filing period is subject to waiver, estoppel, and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). But Bradley has presented no facts or argument warranting application of those exceptions here.

Page 6 of 10



As discussed above, Bradley's retaliation claim as pled in her Complaint stems from her third administrative charge, filed on October 26, 2011. Although Bradley devotes a large portion of her *pro se* summary judgment filings[2] to events occurring before the end of 2010, the court agrees with, and Bradley makes no argument in opposition to, the City's contention that any claims based on discrete acts of retaliation that occurred before December 30, 2010, including any claims stemming from her first or second administrative charges, are time-barred. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002). Similarly, to the extent Bradley attempts to advance a claim of a retaliatory hostile work environment (sometimes referred to as "retaliatory harassment"), she cannot show that any act contributing to such a claim occurred after December 30, 2010, so any such claim would also be untimely. See Morgan, 536 U.S. at 115-117 (discussing how to determine whether a hostile work environment claim is timely); Fordyce v. Prince George's Cnty., Md., 43 F. Supp. 3d 537, 552 (D. Md. 2014) (discussing what a plaintiff must show to establish a claim based on a retaliatory hostile work environment).

Thus, the only event for which a timely administrative charge was filed is Bradley's termination on January 5, 2011. The requisite elements for a *prima facie* case of retaliation typically include: (1) the employee engaged in a protected activity; (2) the employer acted adversely against him or her; and (3) there was a causal connection between the protected activity and the asserted adverse action. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Importantly, a plaintiff must show that but for the protected activity, she would not have experienced the alleged adverse act. See Univ. of Tex. Sw. Med. Ctr.

---

[2] Although Bradley's Complaint was drafted by her former attorney, Bradley is now self-represented following the court's orders relieving counsel. (See ECF Nos. 37 & 55.)

Page 7 of 10



v. Nassar, 133 S. Ct. 2517, 2533, 2534 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation," which means "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

On this record, no reasonable jury could find that but for Bradley's protected activity, she would not have been terminated. Bradley cannot show a causal connection between her termination and the filing of her first or second charges, filed nine and four months, respectively, before her discharge. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that to establish a causal connection based on temporal proximity alone, the time between the employer's knowledge of the protected activity and the adverse employment action must be "very close" and holding a twenty-month period to be insufficient); King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (noting that two months and two weeks separating the notice of the protected activity and the adverse action can be "sufficiently long so as to weaken significantly the inference of causation between the two events"); Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229 (4th Cir. 2006) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment). Further, as argued by the City, the fact that the City continued to employ Bradley after she complained of retaliation the first time in the fall of 2010 arguably negates an inference that any protected activity caused her termination. In any event, even if she could establish a *prima facie* case of retaliation, she cannot show that many of the City's proffered reasons for her termination—leaving her post, drafting a memorandum while she was supposed to be working, and threatening harm to a City employee—were false. And she certainly



has presented no evidence to show that the decision makers did not genuinely believe she had engaged in that conduct. See Amizi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006) ("In assessing pretext, a court's focus must be . . . whether the employer believed its stated reason to be credible."), cited in Holland, 487 F.3d at 217; cf. Holland, 487 F.3d at 213, 217 (affirming the district court's finding that Holland had presented no evidence to show that the decision maker's proffered reason for firing Holland was "disingenuous" and addressing the issue of pretext and granting summary judgment where the plaintiff had no evidence that the decision maker did not "honestly believe" threats were made and that the plaintiff "deserved to be discharged"). Accordingly, she cannot show that the City's proffered reasons for terminating her employment were pretextual or that but for retaliatory animus, she would not have been fired.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the plaintiff's motion for summary judgment be denied and that the defendant's motion for summary judgment be granted.

April 17, 2015
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).